MICHAEL JAY GREEN4451
841 Bishop Street, Suite 2201
Honolulu, Hawaii  96813
Telephone:  (808) 521-3336
Facsimile:  (808) 566-0347
Email:  michaeljaygreen@hawaii.rr.com

WILLIAM L. SHIPLEY, JR.                     9066
841 Bishop Street, Suite 2201
Honolulu, Hawaii  96813
Telephone:  (808) 521-3336
Facsimile:  (808) 566-0347
Email:  808Shipleylaw@gmail.com

Attorneys for Plaintiff
TERRANCE CROWLEY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TERRANCE CROWLEY,<br><br>          Plaintiff,<br><br>     vs.<br><br>WAL-MART STORES, INC. a<br>Delaware corporation; REY ARMIJO;<br>and CHARLES SALBY,<br><br>          Defendant. | )  CIVIL NO.<br>)<br>)<br>)  COMPLAINT; DEMAND FOR<br>)  JURY TRIAL; SUMMONS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **COMPLAINT**

Comes now the above entitled Plaintiff, TERRANCE CROWLEY,

individually, by and through his attorneys of record, Michael Jay Green and

William L. Shipley, Jr., and hereby seek redress and damages against the

Defendants WAL-MART STORES, INC. (hereinafter "WAL-MART") a Delaware corporation, and REY AMIJO and CHARLES SALBY, individually, and in their corporate capacities, FOR VIOLATIONS OF Plaintiff's rights under the Age Discrimination in Employment Act, Family and Medical Leave Act (FMLA), Americans with Disabilities Act (ADA), for creating a hostile work environment, and for retaliation; and states as his claims and causes of action, the following:

## INTRODUCTION

1.     Plaintiff TERRANCE CROWLEY, individually, seeks redress and damages for disability discrimination, age discrimination, violation of his rights under the Family and Medical Leave Act, for creating a hostile work environment, and/or retaliation, by the above named defendants, in violation of his rights under the Age Discrimination in Employment Act, 29 U.S.C § 621 et. seq., Family and Medical Leave Act, 29 U.S.C. § 2617; the American's with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq.

## JURISDICTION

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1332, and 28 U.S.C. § 1367(a).

3.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because the Plaintiff and all the Defendants either reside in this District or have a

principal place of business in this District, and the events giving rise to Plaintiff's claims all occurred in this District.

## ADMINISTRATIVE PROCEDURE

4.      Plaintiff fulfilled all conditions precedent to the bringing of his action under any and all claims of discrimination and retaliation pursuant to federal and state law.

5.      Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) against the Defendants on November 20, 2014.  On March 7, 2016, the Plaintiff received his "Right To Sue" letter from the Equal Employment Opportunity Commission.

## FACTUAL ALLEGATIONS IN SUPPORT OF CAUSES OF ACTION

6.      Plaintiff CROWLEY is currently a 63 year old male, who was first hired by Defendant WALMART in November, 1996, as a "Department Manager" for WALMART's newly opened store in Hilo, Hawaii.  In 1995, Plaintiff CROWLEY retired after a distinguished twenty three (23) year career in the United States Navy, where he had risen to the rank of Lieutenant Commander as a Submariner at the time of his retirement.

7.      On October 28, 2014, Plaintiff CROWLEY, then age 62, was wrongfully terminated by WAL-MART in violation of his statutory and constitutional rights as set forth herein.

3

8.      During his eighteen (18) year career with WAL-MART, Plaintiff CROWLEY was consistently and steadily promoted through various management positions, received positive performance reviews for his management of his departments, stores, and personnel, and received numerous awards and commendations for the performance of the stores where he was in charge.

9.      In August, 1997, Plaintiff CROWLEY was promoted from his position as Department Manager of the Hilo store, to the position of Assistant Store Manager.

10.     In 2003, Plaintiff CROWLEY was promoted to the position of Co-Manager, first of the WAL-MART Kunia Store on Oahu, and then of the WAL-MART Kona store on Hawaii Island.

11.     In 2005, Plaintiff CROWLEY was promoted to the position of Store Manager of the WAL-MART Hilo Store where he had started his career, and now was responsible for all aspects of store operations and performance.  His supervisory responsibilities included a management staff and overall store work force of between 250 and 300 employees.  Two members of the management staff trained by Plaintiff CROWLEY were promoted to positions of Store Manager at WAL-MART Stores in Kunia and Pearl City on Oahu, and many other members of his staff went on to become department managers and assistant managers in the Hilo store and other WAL-MART store locations.

12.     Numerous times during his tenure as Store Manager, Plaintiff CROWLEY was called upon by WAL-MART Corporate management to travel to other stores which were underperforming in order to assist the management staff of those stores to improve the appearance and operations of their facilities.  Many times Plaintiff CROWLEY was given the responsibility for heading up teams of visiting management personnel in such circumstances, directing the overall effort of many managers and assistant managers from other stores to address deficiencies at these other WAL-MART Stores.

13.     Individual WAL-MART Stores in the State of Hawaii were overseen by a WAL-MART "Market Manager" based on Oahu.  The WAL-MART Market in Hawaii was part of the WAL-MART Western Region, which included, but was not limited to, WAL-MART stores in Alaska, California, Arizona, Nevada, Oregon, and Washington, and Idaho.

14.     The WAL-MART Hilo Store was awarded "Division Store of the Year" for its performance in calendar year 2005, Plaintiff CROWLEY's first year as Store Manager.

15.     In 2005 and 2010, the WAL-MART Hilo store under the management of Plaintiff Crowley was awarded "Market Store of the Year" in the State of Hawaii for its overall performance.  As noted, 2005 was Plaintiff Crowley's first year as Store Manager.

16.    From 2005 to December 2012, during Plaintiff Crowley's tenure as Store Manager for the WAL-MART Store in Hilo, the WAL-MART Market Manager for the State of Hawaii was Brian Halsey. From January 2013 until November 2014, the WAL-MART Market Manager for the State of Hawaii was DEFENDANT REY ARMIJO. Regional Managers whose responsibilities include the State of Hawaii while Plaintiff Crowley was Store Manager were DEFENDANT CHALRES SALBY and Mickey Anderson. During Plaintiff CROWLEY's tenure as Store Manager, the Market Asset Protection Manager (MAPM) for the Hawaii Market was Misty Carter. During Plaintiff CROWLEY's tenure as Store Manager there were two Human Resources Managers for the Hawaii Market, Jennifer Frick and Rose Cacho.

17.    On October 27, 2014, Cacho and DEFENDANT ARMIJO summoned Plaintiff CROWLEY to the WAL-MART Market Offices on Oahu. This was Plaintiff CROWLEY's first day back at work following an authorized Leave of Absence based on medical necessity, during which he had surgery on his left ankle. Notwithstanding the fact that Plaintiff CROWLEY informed Cacho that he was under doctor's orders to not work more than four (4) hours a day until released to full time duty by his surgeon, Cacho told Plaintiff CROWLEY that the meeting date was not flexible, and the meeting was mandatory. After his arrival, Plaintiff CROWLEY was kept waiting in the Oahu offices for several hours, and the overall

time he spent at the Oahu offices was in excess of nine (9) hours, not including travel time there and back from Hawaii Island.

18. During the meeting to which Plaintiff CROWLEY was summoned, Defendant ARMIJO and Cacho informed him that he was being terminated for an alleged episode of "gross misconduct" regarding an incident which had taken place more than 18 months earlier, when, in March of 2012, an WAL-MART employee at the Hilo Store had struck a store vendor's vehicle while operating a forklift in the receiving bay of the WAL-MART Hilo Store. The alleged "gross negligence" of Plaintiff CROWLEY involved a failure on his part to address safety considerations with the forklift, which was found upon inspection to have "bald" tires. This justification was certainly pretextual and falsely stated as the reason for his termination, as the model of forklift in question was sold new by the manufacturer with hard rubber tires having no surface tread. The actual motivations for the wrongful termination of the Plaintiff were his age, his use of Family and Medical Leave Act leave for medical care, and his history of physical disability involving his left ankle which traced back to an injury he suffered during his active duty service in the United State Navy. Defendants wrongly blamed Plaintiff CROWLEY's age and physical disability for a decline in sales and appearance at the WAL-MART Hilo Store beginning in the second half of 2011, and continuing until the wrongful termination of the Plaintiff. The cause of the

decline in store sales was, in fact, the opening of new stores in 2011 by WAL-MART competitors Safeway and Target, immediately next door to the WAL-MART Hilo Store. The wrongful termination of Plaintiff CROWLEY was for the purpose of making him the "scapegoat" for Hawaii Market Management's failure to properly prepare and respond to the new market environment created by the opening of the Target and Safeway Stores, and for the purpose of reducing payroll expenses at the Hilo Store given that Plaintiff CROWLEY was the most highly compensated employee at the Hilo Store, with a combined annual salary and bonus in excess of $250,000.

## PLAINTIFF CROWLEY'S DISABILITY

19. While on active duty with the United States Navy, Plaintiff CROWLEY suffered an onboard ship injury to his both his right and left ankle joints. The nature of the injury did not require surgical correction while on active duty, but at the time of his retirement, he was adjudged by the Department of Defense to be 20% disabled due to the injury. Plaintiff CROWLEY understood that the prognosis for the injury was gradual deterioration of the ankle joint over time as a result of normal ambulation.

20. Fourteen years of working on hard surface flooring while employed by WALMART eventually took its toll on Plaintiff Crowley's left ankle. After experiencing significant and increasing pain over more than a year period, in April,

8

2010, Plaintiff Crowley underwent surgery on his left ankle at Tripler Army Hospital in Honolulu, Hawaii.

21.    Plaintiff Crowley was given instructions by his treating physician to not bear weight on his ankle for a period of twelve (12) weeks to insure that the surgical procedure had sufficient time to fully heal.  Due to the extended nature of his anticipated recuperation, Plaintiff Crowley had applied for, and was granted, twelve (12) weeks of "Leave of Absence" for medical necessity pursuant to WAL-MART policy.

22.    Even though he was officially excused from his work obligations under the Leave of Absence policy, Plaintiff Crowley was pressured by Market Manager Halsey to return to work before the end of his twelve week Leave of Absence.  While Plaintiff Crowley was away from the WAL-MART Hilo Store, he remained in close contact with his Shift Managers and Assistant Managers.  During his absence he learned of visits made to the Hilo Store by Halsey, during which Halsey would criticize the condition of the store, both from the standpoint of cleanliness and sufficient inventory stock on the shelves.  Visits by management personnel on days when they knew Plaintiff Crowley was scheduled to be off work or out of the store became a recurring experience, done purposely and with the intent to create an impression in Market Management records that Plaintiff

9

Crowley was away from his store more often that was acceptable, and therefore not attentive to the needs of his Store as identified by Market Management staff.

23. Plaintiff Crowley had endured the pain in his ankle for more than a year, and purposely delayed the surgical correction until the spring of 2010 so as to not take the Leave of Absence during the holiday season or store inventory.

24. Due to the persistent comments and complaints by Market Manager Halsey about Plaintiff Crowley being absent from the Hilo Store, notwithstanding the fact that he was on authorized Leave of Absence status due to medical necessity, Plaintiff Crowley returned to work on a limited basis only four weeks after his surgery. His only reason for doing so was the pressure he felt from Market Manager Halsey, and his criticism about Plaintiff CROWLEY being away from the store. He worked a limited schedule for the first four weeks of his return to work, and full work schedule for what would have been his final four weeks of Leave of Absence. During that time he had difficulty making his way around the Hilo Store while wearing an orthopedic boot on his foot, and needed the assistance of a cane for balance and to keep weight off his foot when needing to walk about the store.

25. Within months of his return to normal work status, Plaintiff Crowley's surgeon informed him that the attempted surgical repair of his ankle was not successful, and the failure to allow sufficient time for the joint to fully heal before

beginning to walk on it again was at least partially to blame.  As a result, a second surgical procedure would be necessary to address the new problems.

26.    Though the second surgical effort to attempt to correct the ankle problem was recommended immediately, Plaintiff Crowley delayed having the second surgery due to WAL-MART policy which prevented him from having two "Leave of Absence" periods in a single calendar year which exceeded fifteen (15) weeks, notwithstanding the fact that he had not taken the full Leave of Absence starting in April 2010 due to the pressure put upon him by Market Manager Halsey to return to work at his store.  In May, 2011, Plaintiff Crowley was able to apply for, and again was granted, twelve (12) weeks Leave of Absence to have the second surgery on his left ankle, and remain off work for a sufficient time to allow the ankle to fully heal.

27.    In the weeks leading up to the May 2011 surgery, after Market Manager Halsey became aware that Plaintiff Crowley would need another surgery and had been granted another twelve (12) week Leave of Absence, Halsey questioned whether the second surgery was necessary.  When assured that it was, as evidence by the pronounced limp in Plaintiff's Crowley's walk, Halsey then questioned whether Plaintiff Crowley remained physically able to perform his job duties, which Plaintiff CROWLEY understood to be a comment on his age and physical disability.  Halsey questioned how long Plaintiff Crowley would be off

11

work for the second surgery, even though he knew that Plaintiff Crowley had been approved for twelve (12) weeks Leave of Absence. This questioned suggested to Plaintiff that there was an expectation by Market Manager Halsey that Plaintiff CROWLEY should return to work early even if contrary to medical advice.

28. Again feeling pressure by comments of Market Manager Halsey and others that he return from his Leave of Absence earlier than planned, Plaintiff Crowley returned to work after only eight (8) weeks of his approved Leave of Absence.

29. As noted in more detail herein, in March 2011, Safeway Supermarkets opened a new store directly next door to the WAL-MART Hilo Store. In July 2011, Target Corporation opened a new Target Store next door to the new Safeway. Plaintiff Crowley felt extreme pressure from Market Management to return to work prior to the scheduled opening of the Target Store in the summer of 2011 in order to manage the Hilo Store through the expected decline in its sales volume. Plaintiff CROWLEY was initially told that there was an expectation that sales totals of the Hilo Store could fall from 20 to 25%. Later he was told that the expected decline in sales volume would be closer to 5 to 8%.

30. Beginning in the summer of 2011, Market Manager Halsey began making more frequent trips to visit the WAL-MART Hilo store following the opening of the Target store next door which, combined with the opening of a new

Safeway Supermarket next to the Target, resulted in a decline in the sales volume of the WAL-MART Hilo Store of approximately 20%. During the first of these trips, when Plaintiff CROWLEY was still on an authorized Leave of Absence, Market Manager Halsey regularly criticized the condition and appearance of the Hilo store, the amount of missing product not on the shelves, and the amount of product building up in the receiving bay and offsite storage locations.

31. In June 2011, while Plaintiff Crowley was out on authorized Leave of Absence status, Regional Manager Defendant CHARLES SALBY visited the WAL-MART Hilo Store along with representatives from Market Management. While speaking with of a member of Plaintiff Crowley's management team in Plaintiff CROWLEY's absence, Regional Manager Salby stated that it would be nice if the Store Manager, referring to Plaintiff CROWLEY, was ever in the store when he visited.

32. Contrary to medical advice, Plaintiff CROWLEY returned to work after only eight (8) weeks of his authorized Leave of Absence, just prior to the opening of the Target Store.

33. During Market Manager's Halsey's more frequent trips to the Hilo Store following the opening of the Target Store, he regularly inquired about Plaintiff CROWLEY's physical limitations, and whether his inability to easily get around the store during the work day were negatively affecting his management of

the store.  Plaintiff CROWLEY was again using a walking boot and cane in an effort to prevent further injury to his surgically repaired ankle.

34.    In October 2011, while attending a meeting of all Hawaii Market Management personnel in Honolulu, Defendant SALBY called out Plaintiff CROWLEY in front of the assembled crowd, and sarcastically stated "I can't wait to finally get to visit you when you are actually in your store."  Plaintiff CROWLEY felt embarrassed and humiliated, as it was clearly a comment by Defendant SALBY regarding his absences over the prior 18 months necessitated by the medical procedures treating his disability.

35.    In March 2012, Defendant SALBY and fellow Regional Manager Mickey Anderson visited the WAL-MART Hilo Store along with Market Manager Halsey.  During the "out briefing" on their observations while at the store, Defendant SALBY told Plaintiff CROWLEY that he was the "most resistant manager to change in the entire region."  Market Manager Halsey added to that comment that Plaintiff CROWLEY was "Too set in his ways", and again questioned whether Plaintiff CROWLEY was physically capable of continuing to manage the store.  Plaintiff CROWLEY understood the statements by both Defendant SALBY and Halsey were comments on his age and physical disability, and calling into question his ability to perform his job functions as a result of both.

14

36.     In April 2012, for the first time in the sixteen (16) years he had been employed by Defendant WAL-MART, his annual performance evaluation by Market Manager Halsey rated him as "Development Needed," a negative performance review which could lead to disciplinary action under WAL-MART policy. For the four prior years as Store Manager, Plaintiff CROWELY received positive performance reviews and positive comments concerning his job performance.

37.     Plaintiff CROWLEY learned through information provided to him by other Hilo Store employees, that in March 2012, Market Asset Protection Manager Misty Carter, working from her location on Oahu, directed a Hilo Store employee to attempt to track Plaintiff CROWLEY's movements in the Hilo Store during the workday in order to determine how often Plaintiff CROWLEY walked through the store, as opposed to remaining in his office, telling the employee that CROWLEY was not able to do his job.  When Plaintiff CROWELY questioned Market Manager Halsey about Carter's instructions, Halsey's only reply was that CROWLEY "not sit in his office all day."  Plaintiff CROWLEY had never "sat in his office all day" even when his mobility was hindered by the physical deterioration of his ankle, both before and after his surgeries.

38.     In June 2012, in consultation with his treating physician at Tripler Army Hospital, Plaintiff CROWLEY was advised that the second surgery had also

failed to correct the problems with his left ankle, and a third surgery would be necessary to correct the worsening condition. Plaintiff Crowley applied for, and was granted, another twelve (12) weeks of Leave of Absence to undergo the surgery and recover.

39. When Market Manager Halsey learned Plaintiff CROWLEY was again scheduled for surgery and a Leave of Absence, he again questioned whether the surgery was necessary, and refused to listen when Plaintiff CROWLEY attempted to explain the medical justification that he had been given by his doctor.

40. Just as during his prior to Leaves of Absence, Plaintiff CROWLEY heard from Hilo Store employees that during visits to the store in Plaintiff CROWLEY's absence, Market Manager Halsey criticized the Hilo Store's appearance and sales practices during Plaintiff CROWLEY's Leave of Absence in 2012, and repeatedly asked when Plaintiff CROWLEY would be returning even though Halsey was well aware of the scheduled Leave of Absence period. In response to the complaints and comments, PLAINTIFF HALSEY once again returned to work in August 2012, after only eight weeks Leave of Absence.

41. In August 2012, Defendant SALBY visited the WAL-MART Hilo Store. During a meeting with Plaintiff CROWLEY and an Assistant Manager, a female over 50 years of age, SALBY stated to the two of them, "Old people like you have a hard time with new concepts and technology." During the same visit,

16

Market Manager Halsey, seeing Plaintiff CROWLEY again needing a walking boot and cane to get around the store, commented on whether Plaintiff CROWLEY had the physical ability to run the store after three surgeries.

42.    In September 2012, Market Manager Halsey made another of his many visits to the Hilo Store on a day Plaintiff CROWLEY was scheduled to be out of the Store.  On this particular visit, Plaintiff CROWLEY was at a follow up medical consultation with his surgeon at Tripler Army Hospital on Oahu.  Market Manager Halsey inquired of the Assistant Manager in charge of the store about Plaintiff CROWLEY's whereabouts, and was told that Plaintiff CROWLEY was a doctor's appointment which was scheduled in the Manager's Log which Halsey had access to.

43.    Also in September 2012, Plaintiff CROWLEY made limited use of a WAL-MART Store electric cart, normally used by customers with limitations on their mobility to get around the store.  Plaintiff CROWLEY received an email from Human Relations Management on Oahu advising him that use of such devices by WAL-MART employees was against company policy, and if he needed the assistance of an electric vehicle to get around the store, he would have to supply that vehicle himself.

44.    In October 2012, Market Manager Halsey was making almost daily visits to the Hilo Store, traveling from the Market Management Offices on Oahu.

17

During one such visit, Market Manager Halsey stated to Plaintiff CROWLEY "I don't think you are able to run your store", which Plaintiff CROWLEY took as a comment on his continuing physical difficulties with his left ankle and his age. As a result of this comment, Plaintiff CROWLEY expect to shortly receive is "First Coaching", which is a WAL-MART term for first level disciplinary action based on poor performance.

45.   While Plaintiff CROWLEY anticipated a "First Coaching" following Market Manager Halsey's comment in October 2012, Plaintiff CROWLEY learned shortly thereafter that Market Manager Halsey was arrested for drunk driving by Hawaii Island Police sometime in October or November of 2012. Following his arrest Market Manager Halsey did not make any further trips to the Hilo Store in the final weeks of 2012, and was terminated by WALMART in December, 2012.

46.   DEFENDANT REY ARMIJO took over the position of WAL-MART Market Manager for the Hawaii Market. During his first visit to the WAL-MART Hilo store in January 2013, Defendant ARMIJO asked Plaintiff CROWLEY if he had any "concerns" as Store Manager of the Hilo Store. After some initial reluctance on his part given that he had never met Defendant ARMIJO before, Plaintiff CROWLEY eventually explained all the difficulties in his relationship with Halsey and Defendant SALBY, going back to his first surgery in April 2010, the opening of the Safeway and Target Stores in 2011, and through Halsey's last

18

visit in October 2012 following his return to work from his third surgery, and from which Plaintiff CROWLEY was expecting a "First Coaching." Defendant ARMIJO told Plaintiff CROWLEY that he was aware of the entire history, and that as far as ARMIJO was concerned they would be starting over with a "clean slate."

47. Notwithstanding his words, Defendant ARMIJO did thereafter begin a lengthy discussion on the amount of time that Plaintiff CROWLEY had been away from the WAL-MART Hilo Store as a result of his medical issues over the previous three years, and made it clear that he expected that not to continue in the future.

48. Plaintiff CROWLEY expressly requested that Defendant ARMIJO initiate an official internal investigation into the manner in which he had been treated by Halsey, including the matter of Market Management officials directing Hilo Store employees to "track" Plaintiff CROWLEY's location through the course of the work day, and the repeated comments evidencing an animus against Plaintiff CROWLEY based on his age and physical disability. Plaintiff CROWLEY is informed and believes, and thereon alleges, that no investigation into the misconduct by WAL-MART Market Management personnel directed against Plaintiff CROWLEY was ever initiated by Defendant ARMIJO, or anyone else, although it was within his authority to do so. In February 2013, Plaintiff

19

CROWLEY was informed by Hilo Store employees that Misty Carter had directed Hilo Store employees to continue to track Plaintiff CROWLEY's movements around the store using the store's video surveillance cameras, and report back to her. Plaintiff CROWLEY reported this information to Defendant ARMIJO, and he again did nothing.

49. In April 2013, representatives from WAL-MART Corporate Legal Department visited the Hilo Store to discuss with Plaintiff CROWLEY and his management staff the recent poor results of an employee survey. In the aftermath of that visit, Plaintiff CROWLEY received another annual performance review of "Development Needed."

50. In May 2013, Plaintiff CROWLEY began seeing a psychologist in Hilo, Hawaii, in order to deal with issues of stress, anxiety, and depression which he was feeling as a result of his deteriorating job status. Plaintiff CROWLEY was most bothered by the blatant discrimination he was suffering due to his age and disability.

51. In May 2014, Plaintiff CROWLEY was again in continual pain and walking with a pronounced limp due to further worsening of the condition of his left ankle. While visiting the WAL-MART Hilo Store in May 2014, Market Manager ARMIJO questioned whether Plaintiff CROWLEY was physically able to

run the Hilo Store.  Defendant ARMIJO made several similar references over the period from May 2014 to August 2014.

52.   In August 2014, Plaintiff CROWLEY's surgeon recommended a fourth surgery to fuse the ankle joint and eliminate the worsening condition once and for all.  Although fusing the joint would eliminate any flexibility, it would resolve the chronic pain that Plaintiff CROWLEY had experienced for more than five years at that point.

53.   On August 27, 2014, Plaintiff CROWLEY applied for eight (8) weeks Leave of Absence even though his doctor was advising a healing period of twelve (12) weeks.  Plaintiff CROWLEY knew that twelve (12) weeks of leave beginning in September 2014 would take him into the Holiday shopping season, and PLAINTIFF CROWLEY did not want to be away from the Hilo Store during that critical time of the year.  But during the first four weeks of his return to work were to be only "intermittent", with a maximum of four (4) hours per day working, pursuant to his doctor's instructions.

54.   Plaintiff CROWLEY underwent the ankle fusion surgery as scheduled, and his first day back to work was October 27, 2014, on which date he was summoned to travel to the Market Management Offices on Oahu, and terminated for alleged "gross negligence" involving an event that had happened approximately eighteen (18) months earlier.

## PRETEXTUAL DISCIPLINARY ACTS LEADING TO PLAINIFF'S TERMINATION

55.     WAL-MART management personnel who are deemed to not be performing up to acceptable standards are given "First", "Second," and "Third" "Coachings".  These are oral and written admonishments regarding their failure to perform up to acceptable standards.  In addition to "Coachings", a manager can be placed on a "Performance Improvement Plan", where specified areas of improvement must be demonstrated in order to avoid further disciplinary action, including potential termination.

56.     As noted above, in April 2012 and 2013, Plaintiff CROWLEY's annual performance review was rated "DEVELOPMENT NEEDED" for the first time in his WAL-MART career.

57.     In August, 2013, Defendant ARMIJO made his first "official" visit to the Hilo Store, accompanied by Market Asset Protection Manager Misty Carter. Defendant ARMIJO scolded Plaintiff CROWLEY in front of members of his management team, calling the Hilo Store "The worst store in the Market, and "an embarrassment to the community."  Defendant ARMIJO later told Plaintiff CROWLEY "You won't survive this", and informed him that he was getting his "First Coaching.'

58.     Among the justifications for the "First Coaching" were an excessive level of "outs" in the Store, which is a reference of the number of items out of

22

stock and not present on store shelves, but generally considered items that should be part of the instore sales inventory at all times of the year.  In addition, the "First Coaching" addressed issues of store cleanliness and overall appearance.

59.    The opening of the new Safeway and Target stores in March and July, 2011, impacted the amount and type of inventory turnover in the WAL-MART Hilo Store.  Several items sold by Safeway, most significantly fresh meat and produce, showed measureable declines in sales volume at the WALMART Hilo store in the months and years following the Safeway Store opening.  When Target opened its store next door to Safeway, general merchandise, apparel, and housewares sales at the WAL-MART Hilo Store declined significantly, and overall store sales fell approximately 20%.

60.    Notwithstanding this decline in storewide sales through the second half of calendar year 2011, inventory buyers for the Hawaii Market continued to direct the same level of inventory replacement stock to the WALMART Hilo Store as was the case prior to the opening of the Safeway and Target Stores.  As a result, excess inventory needing to be stored in one fashion or another began to accumulate at the Hilo Store.

61.    The WAL-MART Hilo Store was the last among all WAL-MART Stores in Hawaii to receive its freight from distribution centers on the West Coast.  Freight shipments traveled first to Honolulu, and then out to the stores on the

23

neighbor islands, with the Hilo Store being last in line. As a result, delivery of new inventory took longest to arrive at the Hilo Store when measured from the time an order was placed by Store Management personnel or the Market Management Buying Staff. The longer lead time meant that items displayed on the shelf sometimes went out of stock while new inventory of that item was enroute to the store. But where other stores in the Market normally would wait only a few days for newly ordered items to arrive, the WAL-MART Hilo Store would normally wait through a period of a week or more to receive replacement inventory after orders were placed.

62. At the same time, because of the decline in store sales of approximately twenty percent (20%), computer programs used by WAL-MART reduced scheduled working hours for WAL-MART Hilo Store employees, and imposed a hiring freeze for the WAL-MART Hilo Store until a reduction in force was accomplished that corresponded to the Store's lower sales revenue.

63. Plaintiff CROWLEY repeatedly made the point to Market Management that the combination of excess inventory arriving at the Hilo Store, combined with the decreased man hours on the schedule for Store employees (and the overall decline in store staffing in 2012 and thereafter), made it increasingly difficult to find locations to store the inventory that could not be immediately taken into the store and placed on shelves due to a lack of manpower. At the very same

24

time inventory was needed inside the store to address the "outs" problem, there was insufficient staff working each day to efficiently move the inventory from storage locations to the store shelves because the volume of excess inventory that had accumulated was impossible to store in a coherent manner. The WAL-MART Hilo Store had the least amount of available square footage for storage when compared to the other WAL-MART stores in the Market. As a result, inventory that could not be stored onsite under cover had to be stored in shipping containers that were located nearby.

64.     Other inventory was stored in the receiving bay of the Hilo Store in such a fashion that when the daily freight shipment arrived in the late afternoon, Store employees had to first relocate pallets of unpacked inventory delivered on previous days from the receiving bay to locations inside the store, unload the newly arrived inventory into the receiving bay, then bring the inventory taken into the store back to the receiving bay, and reorganize the stored inventory in the receiving bay in order to have access to items that were needed for restocking inside the store. The excess number of employee hours that were necessary to address this inefficient process contributed to the insufficient number of employee hours available to do restocking of shelves inside the store, and address issues of general maintenance and cleanliness that were repeated subjects of negative commentary by Market Management visitors to the Store.

65.  In addition, the Hilo Store was handicapped by the presence of outdated technology in the form of "repeater" stations with insufficient signal strength.  The "repeater" allowed handheld inventory devices to scan inventory in locations inside and outside the store, and record that inventory information into the Store's computer tracking system.  But because of insufficient signal strength in the "repeaters" installed in the Hilo Store, the hand held inventory devices could capture inventory information, but could not relay that information to the store's computer.  The result was inaccurate inventory control due to mistakes made in manually logging inventory information into the Store's computers based on information captured by the hand held devices.

66.  Store conditions with regard to "outs" and general appearance and cleanliness remained fluid during the period October 2013 to April 2014.  Efforts to address the problems were continual and ongoing, but the limitation on staff hours and reduction in staff employees continually hampered PLAINTIFF CROWLEY in comprehensively addressing each problem.  PLAINTIFF CROWLEY was denied new equipment that he requested that would have improved the efficiency of store personnel in their efforts to do their jobs.  Low employee morale resulted from the mandated reduction in schedule hours.  In addition, WALMART employees are paid an annual bonus each year based on sales revenues that exceed targets set for each store.  No year-end bonuses were

paid to WALMART Hilo Store employees at the end of 2012 and 2013 due to the decline in store sales volumes following the opening of the Safeway and Target Stores in 2011. The low employee morale led to higher than normal turnover in the Hilo Store's workforce, leading to more hours spend training new employees, and lower efficiency among new employees during their hours working.

67. In April of 2014, Plaintiff CROWLEY's annual performance review was "Development Needed," accompanied by negative commentary on his job performance. This was the third consecutive evaluation of "Development Needed", all of which had come in the years following the opening of the Safeway and Target Stores immediately next door to the WALMART Hilo Store.

68. In May of 2014, Defendant ARMIJO visited he Hilo Store, made reference to Plaintiff CROWLEY walking with a pronounced limp (fourth surgery was not yet scheduled), and questioned whether he was physically able to run the store.

69. In June 2014, Plaintiff CROWLEY received a "Second Coaching" from Defendant ARMIJO and was placed on a Performance Improvement Plan (PIP) which identified specific areas of job performance that would have to be addressed in order for Plaintiff CROWLEY to not be terminated. Even though it had been two years since his most recent surgery at this point in time, Defendant ARMIJO continued to reference Plaintiff CROWLEY's time away from the store,

27

and whether his physical problems were negatively impacting his ability to run the store.

70.    Among the goals established in the PIP were that overall store "outs" be reduced from approximately 9000 items to no more than 3000 items.  In addition, standards of overall cleanliness and appearance were demanded which no store in the Hawaii Market would have passed.  Plaintiff CROWLEY had either worked, or visited for the purpose of assisting store management at every other store in the Hawaii Market during his tenure as management employee in the Hawaii Market, and was familiar with the level of "outs" for each store, and the nature of each store's challenges with regard to overall cleanliness and appearance standards.  Plaintiff CROWLEY knew from the demands made in the PIP with regard to his performance in these two areas that the goals set forth were not just unrealistic, but were factually unattainable, and that he was being "set up" to fail in order to terminate his employment.

71.    In July 2014, Defendant ARMIJO and other members of the Market Management team traveled to the WAL-MART Hilo Store knowing that they were arriving on a day Plaintiff CROWLEY was scheduled to be off.  Plaintiff CROWLEY, by happenstance, came into the store to check his email, and encountered Defendant ARMIJO and the others while he was there.  He received generally positive comments about improvements that had been made to the Hilo

28

Store in accordance with the requirements of the PIP he was working under. Notwithstanding the comments, and the fact that "outs" had been reduced from approximately 9000 to 4500, Defendant ARMIJO instructed Plaintiff CROWLEY to not leave the store, and he was going to receive his "Third Coaching" because not all goals established by the PIP had been met.

72.    As noted above, in August 2014, Plaintiff CROWLEY was advised by his treating physician that the only remaining option for his continuing ankle problems was to fuse the ankle joint.  It had been more than two years since his most recent surgery, and Plaintiff CROWLEY applied for, and was approved for, a twelve (12) week Leave of Absence to undergo the procedure.  When Defendant ARMIJO became aware of another impending surgery, he questioned the medical necessity as had Halsey before him, and again questioned whether Plaintiff was physically able to run the Hilo Store.  PLAINTIFF CROWLEY began his leave of absence on August 27, 2014.

73.    On October 27, 2014, having cut short his Leave of Absence to only eight (8) weeks in order to return to the store prior to the holiday shopping season, Plaintiff CROWLEY was summoned to the Market Management Offices in Honolulu, and was terminated.  The stated basis for the termination was an episode of "gross negligence" which regarded a forklift accident at the Hilo Store in March 2012, more than eighteen (18) months earlier.  Plaintiff CROWLEY was held

responsible for the fact that the forklift in tires was being operated in an unsafe condition, in that the tires on the forklift were "bald".  This notwithstanding the fact that the forklift in question was sold by the manufacturer new with "hard rubber" tires having no raised tread on them.

## COUNT I
### *Age Discrimination*

74.    Plaintiff incorporates by this reference the allegations of Paragraphs 1 through 73 above, as if set forth in their entirety herein.

75.    Plaintiff was over the age of forty (40) at all times as alleged herein.

76.    Plaintiff was qualified for his job and performed his job in a manner which was equal to employees of WAL-MART in the Hawaii Market and Western Region who were under the age of forty.

77.    Plaintiff was subjected to regular ridicule, criticism, questioning of ability, policy enforcement, discipline, harassment, and ultimately termination as a result of his age.

78.    The actions of Defendant WAL-MART, as perpetrated by Defendants ARMIJO and SALBY, and other WAL-MART employees or past employees as described herein, were unlawful employment practices in that they had both the actual and perceived effect of discriminating against, depriving and intending to deprive Plaintiff CROWLEY of employment, and otherwise adversely affecting

30

Plaintiff CROWLEY because of his age, in violation of 29 U.S.C. § 621 et. seq., the Age Discrimination In Employment Act.

79. DEFENDANTS WAL-MART, ARMIJO and SALBY engaged in and/or allowed a policy, pattern, and/or practice of discrimination based on age to occur in several instances against Plaintiff CROWLEY.

80. DEFENDANTS WAL-MART, ARMIJO, and SALBY intentionally subjected Plaintiff CROWLEY to unequal and discriminatory treatment by creating and or allowing a hostile and abusive work environment that altered the conditions of PLAINTIFF's employment by knowingly failing and refusing to protect PLAINTIFF from those hostile and abusive conditions based upon his age.

81. DEFENDANTS WAL-MART, ARMIJO, and SALBY intentionally discriminated against PLAINTIFF based on his age. The actions of the DEFENDANTS in intentionally engaging in and/or condoning age discrimination against PLAINTIFF has caused PLAINTIFF great mental anguish, humiliation, degradation, loss of enjoyment of life, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary loss, and other consequential damages.

82. As a result of DEFENDANTS WAL-MART's, ARMIJO's and SALBY's oppressive and malicious and outrageous conduct as alleged herein,

31

Plaintiff CROWLEY is entitled to recover punitive damages from Defendant WAL-MART in an amount to be determined at trial.

## COUNT II
### *(Disability Discrimination)*

83.    Plaintiff CROWLEY hereby incorporates the allegations set forth in paragraphs xx through xx above, as if set forth herein in their entirety.

84.    Plaintiff CROWLEY was qualified to perform the essential functions of the positions he held during his employment with DEFENDANT WAL-MART.

85.    DEFENDANTS WAL-MART, ARMIJO, and SALBY recognized and regarded that Plaintiff CROWLEY suffered from physical impairments that substantially limited one or more of the major life activities of Plaintiff.  Plaintiff CROWELY had sought and obtained approved Family Medical Leave Act protected leave under WAL-MART established policies for the physical impairment he suffered.

86.    Based upon the facts and circumstances described more fully above, Plaintiff CROWELY suffered from discriminatory actions and behavior by DEFENDANTS WAL-MART, ARMIJO, SALBY, and other employees or past employees of WAL-MART.

87.    The hostility and discrimination described more fully above was directed towards Plaintiff CROWLEY based solely upon or was motivated by the disabilities he suffered from.

88.     Because of the adverse actions Plaintiff CROWLEY experienced as a result of his disabilities, Plaintiff CROWLEY has been damaged in an amount exceeding $10,000,000 to be proved at trial, based on the DEFENDANTS having violated the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.

89.     As a result of the DEFENDANTS oppressive, malicious, and outrageous conduct as alleged, Plaintiff CROWLEY is entitled to recover punitive damages from DEFENDANTS in an amount to be determined at trial.

## COUNT III
### (FAMILY MEDICAL LEAVE ACT VIOLATION)

90.     PLAINTIFF CROWLEY hereby incorporates the allegations of paragraphs xx through xx above as if set forth herein in their entirety.

91.     DEFENDANTS WAL-MART, ARMIJO, and SALBY intentionally subjected PLAINTIFF CROWLEY to unequal and discriminatory treatment by complaining and retaliating against him for taking federally protected FMLA leave under an established WAL-MART policy for medical disabilities that were known to and recognized by DEFENDANTS WAL-MART, ARMIJO, and SALBY.

92.     DEFENDANTS WAL-MART, ARMIJO, and SALBY adversely reacted to PLAINTIFF's COMPLAINTS about the discrimination and unequal treatment by engaging in policies, patterns, and/or practices of retaliation, and condoning retaliation against Plaintiff CROWLEY for complaining about

discrimination in violation of federal statutes, and for taking federally protected FMLA leave based upon a recognized disability.

93. Because of the retaliation Plaintiff CROWLEY experienced as a result of his complaints and/or actions against DEFENDANTS WAL-MART, ARMIJO and SALBY, PLAINTIFF has been damaged in an amount exceeding $10,000,000 to be proved at trial for having violated 29 U.S.C § 2617 (FMLA).

94. As a result of DEFENDANTS oppressive, malicious, and outrageous conduct as alleged herein, Plaintiff CROWLEY is entitled to recover punitive damages against DEFENDANT WALMART in an amount to be determined at trial.

## COUNT IV
### (Harassment/Hostile Work Environment)

95. Plaintiff CROWLEY hereby incorporates the allegations set forth in paragraphs xx through xx above, as if set forth in their entirety herein.

96. The work place environment for Plaintiff CROWLEY as created and maintained and allowed by DEFENDANTS WALMART, ARMIJO, and SALBY was unwelcome by PLAINTIFF CROWLEY as it was permeated with discriminatory intimidation, ridicule, and insults from DEFENDANTS ARMIJO and SALBY, PLAINTIFF's direct supervisors, as well as other former WAL-MART employees. The actions and conduct against Plaintiff CROWLEY was so

sever and pervasive that it altered the conditions of Plaintiff's employment and created an offensive and abusive working environment for the Plaintiff.

97. The behavior of DEFENDANTS WAL-MART, ARMIJO, and SALBY was unwelcome and was sufficiently severe and pervasive against the Plaintiff that it detracted from Plaintiff's job performance and kept from maintaining and advancing his career. Further, Plaintiff suffered tangible employment action through information admonishments, criticisms, "coachings", PIP's, verbal threats, and specific actions of undermining his management authority as set forth more fully herein.

98. Any reasonable person would have been offended by the conduct experienced by Plaintiff CROWLEY which was perpetrated and/or allowed by DEFENDANTS WAL-MART, ARMIJO, SALBY, and others, and would have considered the working environment to be abusive and hostile.

99. Plaintiff CROWLEY reported and brought the conduct of Market and Regional Management personnel to the attention of WAL-MART Human Resources staff in the Market, Region, and National staff, but no action was ever taken. As Market Manager, Defendant ARMIJO was the most direct supervisor of Plaintiff CROWLEY.

100. Additionally, Defendant SALBY, as Regional Manager, was in the position of most direct authority to protect Plaintiff CROWLEY from any further

hostilities directed at him by Market Management Staff. However, DEFENDANTS WAL-MART and SALBY failed to take reasonable remedial action to remedy the hostile work environment in which the PLAINTIFF was working and was subjected.

101. As a result of the hostile work environment in which Plaintiff CROWLEY was required to work, he has been damaged in an amount exceeding $10,000,000 to be proven at trial, and DEFENDANTS WALMART, ARMIJO, and SALBY have violated 29 U.S.C. § 621 et. seq., Age Discrimination in Employment, and 42 U.S.C. § 12101 et. seq., Americans with Disabilities Act.

102. As a result of the DEFENDANTS oppressive, malicious, and outrageous conduct as alleged herein, Plaintiff CROWLEY is entitled to recover punitive damages against DEFENDANT WAL-MART in an amount to be determined at trial.

## COUNT V
### *(Retaliation)*

103. Plaintiff CROWLEY hereby incorporates the allegations set forth in paragraphs xx through xx above, as if set forth in their entirety herein.

104. DEFENDANTS WAL-MART, ARMIJO, and SALBY intentionally subjected Plaintiff CROWLEY to unequal and discriminatory treatment by retaliating against him for complaints and/or protected actions that were taken by the Plaintiff. Plaintiff made complaints concerning actual and perceived age and

disability discrimination he had been subjected to.  The protected actions were taking federally protected FMLA leave for medical disabilities that were recognized by DEFENDANTS WAL-MART, ARMIJO, and SALBY.

105.   DEFENDANTS WAL-MART, ARMIJO, and SALBY adversely reacted to these complaints and protected actions taken by Plaintiff CROWLEY by engaging in policies, patterns, and/or practices of retaliating and condoning retaliation against the PLAINTIFF for complaining about age and disability discrimination, and/or for taking federally protected FMLA leave based upon a recognized disability.

106.   Because of the retaliation PLAINTIFF experienced as a result of his complaints and/or protected actions he has been damaged in an amount exceeding $10,000,000 to be proven at trial, and DEFENDANTS have violated 29 U.S.C. § 2617 (FMLA),  and/or 42 U.S.C. § 12101 et. seq., Americans With Disabilities Act.

107.   As a result of DEFENDANTS oppressive, malicious, and outrageous conduct as described, Plaintiff CROWLEY is entitled to recover punitive damages in an amount to be determined at trial.

**ATTORNEYS FEES**

108.   As a direct and proximate result of DEFENDANTS' actions and/or failures to act, the PLAINTIFF has been compelled to retain the services of

37

counsel, and has thereby incurred and will continue to incur in the future costs, expert witness fees, and attorneys' fees which should be required toe paid by the DEFENDANTS.

WHEREFORE, Plaintiff respectfully pray for Judgment in his favor and against Defendants, as follows:

A.    All wages and benefits PLAINTIFF CROWLEY would have received but for the actions of the DEFENDANTS, including but not limited to back pay, front pay, future pecuniary losses, and prejudgment interest as authorized by law.

B.    Compensatory damages in an amount to be determined at trial.

C.    Punitive damages as allowed by law against DEFENDANT WAL-MART.

D.    An award of reasonable attorneys' fees, costs, and litigation expenses; and

E.    Such other relief as the Court may deem just or equitable.

DATED:  Honolulu, Hawaii, June 6, 2016.

/s/ William L. Shipley, Jr.
MICHAEL JAY GREEN
WILLIAM L. SHIPLEY, JR.
Attorneys for Plaintiff
TERRANCE CROWLEY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TERRANCE CROWLEY,<br><br>                    Plaintiff,<br><br>     vs.<br><br>WAL-MART STORES, INC. a<br>Delaware corporation; REY ARMIJO;<br>and CHARLES SALBY,<br><br>                    Defendant. | )  CIVIL NO.<br>)<br>)<br>)  DEMAND FOR JURY TRIAL<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff requests a trial by jury on all issues triable of right by jury in this case.  This demand is made pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED:  Honolulu, Hawaii, June 6, 2016.


/s/ *William L. Shipley, Jr.*
MICHAEL JAY GREEN
WILLIAM L. SHIPLEY, JR.
Attorneys for Plaintiff
TERRANCE CROWLEY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TERRANCE CROWLEY, ) | CIVIL NO. |
| ) | |
| Plaintiff, ) | |
| ) | SUMMONS |
| vs. ) | |
| ) | |
| WAL-MART STORES, INC. a ) | |
| Delaware corporation; REY ARMIJO; ) | |
| and CHARLES SALBY, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## **SUMMONS**

STATE OF HAWAII

TO:   DEFENDANTS

A lawsuit has been filed against you.  Within 21 days after service of this summons on you (not counting the day you received it), you must serve on Plaintiff an answer to the attached Complaint or a Motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on Plaintiff or Plaintiff's attorneys, whose name and address are:

MICHAEL JAY GREEN, ESQ.
841 Bishop Street, Suite 2201
Honolulu, Hawaii 96813

WILLIAM L. SHIPLEY, ESQ.
841 Bishop Street, Suite 2201
Honolulu, Hawaii 96813

If you fail to respond, judgement by default will be entered against you for the relief demanded in the Complaint.  You must also file your answer or motion with the court.

DATED:  Honolulu, Hawaii _____.

CLERK OF THE COURT


_____
Signature of Clerk of Deputy Clerk

2