IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TERRANCE CROWLEY, | ) | CIVIL NO. 16-00293 SOM/RLP |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART MOTION FOR |
| vs. | ) | SUMMARY JUDGMENT |
| | ) | |
| WAL-MART STORES, INC., a | ) | |
| Delaware Corporation; | ) | |
| REY ARMIJO; and | ) | |
| CHARLES SALBY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION FOR SUMMARY JUDGMENT**

## I.      INTRODUCTION.

Plaintiff Terrance Crowley managed a Wal-Mart store in Hilo until, he says, he was fired because Wal-Mart wanted a younger, nondisabled store manager to make the store as profitable as it had been before a Target store opened nearby. Defendants say that Crowley was terminated because of safety concerns that went unaddressed.

In Counts I and II, Crowley asserts that he suffered an adverse employment action in violation of the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA"). In Count III, Crowley asserts that he was retaliated against in violation of the Family Medical Leave Act ("FMLA"). In Count IV, Crowley asserts that he suffered a hostile work environment in violation of the ADEA and the ADA (Count I also asserts a hostile work environment claim under the

ADEA).  Finally, in Count V, Crowley asserts retaliation in violation of the ADA (and repeats the retaliation claim asserted in Count III under the FMLA).  *See* ECF No. 1.

Defendants Wal-Mart Stores, Inc.,[1] Rey Armijo, and Charles Salby now move for summary judgment.  That motion is granted in part and denied in part.  Crowley concedes that all claims against Defendant Salby are time-barred, and the court therefore grants summary judgment in favor of Salby with respect to all claims asserted against him or arising out of his actions.  Crowley also concedes that his FMLA claims are factually unsupported.  Accordingly, the court grants summary judgment in favor of Defendants with respect to the FMLA claims asserted in Counts III and V.  The court also grants summary judgment in favor of Defendants with respect to the ADEA disparate treatment claim asserted in Count I, but denies summary judgment with respect to the ADA disparate treatment claim asserted in Count II. The court also grants summary judgment in favor of Defendants with respect to the hostile work environment claims asserted in Counts I and IV.  Finally, the court denies summary judgment with respect to the ADA retaliation claim asserted in

---

[1] Wal-Mart Stores, Inc., appears to have recently changed its name to Walmart Inc.  *See* http://fortune.com/2017/12/06/walmart-stores-name/; https://www.nasdaq.com/article/wal-mart-stores-to-walmart-whats-behind-the-name-change-cm888265.  This order refers to Wal-Mart, the name at the time of the actions in this matter.

Count V.  To summarize, only the ADA disparate treatment claim
asserted in Count II and the ADA retaliation claim asserted in
Count V remain for adjudication.

## II.    SUMMARY JUDGMENT STANDARD.

Under Rule 56 of the Federal Rules of Civil Procedure,
summary judgment shall be granted when "the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(a).  *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134
(9th Cir. 2000).  The movants must support their position
concerning whether a material fact is genuinely disputed by
either "citing to particular parts of materials in the record,
including depositions, documents, electronically stored
information, affidavits or declarations, stipulations (including
those made for the purposes of the motion only), admissions,
interrogatory answers, or other materials"; or "showing that the
materials cited do not establish the absence or presence of a
genuine dispute, or that an adverse party cannot produce
admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).
One of the principal purposes of summary judgment is to identify
and dispose of factually unsupported claims and defenses.
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that
fails to demonstrate facts to establish what will be an essential

element at trial.  *See id.* at 323.  A moving party without the
ultimate burden of persuasion at trial--usually, but not always,
the defendant--has both the initial burden of production and the
ultimate burden of persuasion on a motion for summary judgment.
*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102
(9th Cir. 2000).

The burden initially falls on the moving party to
identify for the court those "portions of the materials on file
that it believes demonstrate the absence of any genuine issue of
material fact."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors
Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp.*,
477 U.S. at 323).  "When the moving party has carried its burden
under Rule 56(c), its opponent must do more than simply show that
there is some metaphysical doubt as to the material facts."
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
586 (1986) (footnote omitted).

The nonmoving party may not rely on the mere
allegations in the pleadings and instead must set forth specific
facts showing that there is a genuine issue for trial.  *T.W.
Elec. Serv.*, 809 F.2d at 630.  At least some "'significant
probative evidence tending to support the complaint'" must be
produced.  *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv.
Co.,* 391 U.S. 253, 290 (1968)); *see also Addisu*, 198 F.3d at 1134
("A scintilla of evidence or evidence that is merely colorable or

not significantly probative does not present a genuine issue of material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). *Accord Addisu*, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

In adjudicating summary judgment motions, the court must view all evidence and inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 631. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. *Id.* When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *Id.*

III.     **BACKGROUND.**

Crowley was 63 years old when the Complaint in this action was filed in 2016, meaning that he was older than 40 at all relevant times. *See* Answer ¶ 6 (admitting that Crowley was

63 when the Complaint was filed in 2016). While in the Navy,
Crowley injured his left ankle. *See* Crowley Decl. ¶ 2, ECF No.
62-2, PageID # 475-76 (indicating that Crowley had "multiple
service-connected operations on [his] left ankle); Crowley Depo.,
ECF No. 56-7, PageID # 281 (indicating that Crowley had been in
the Navy). In 1996, he was hired by Wal-Mart. *See* Deposition of
Terrance Crowley, ECF No. 56-7, PageID # 281. Then, in 2005, he
was promoted to the position of Hilo Wal-Mart store manager.
*Id.*, PageID # 282.

In July 2011, a Target store opened near the Hilo Wal-
Mart, after which sales at the Hilo Wal-Mart declined about 15%.
*See* Declaration of Terrance Crowley ¶ 18, ECF No. 62-2, PageID
# 481. Crowley says the declining sales resulted in a lower
budget for the Hilo Wal-Mart, and employees were asked to do more
in fewer hours. According to Crowley, employee morale suffered,
as reflected in subsequent Associate Engagement Surveys that did
not rate employee satisfaction or the store highly. *Id.* ¶¶ 19-
23, PageID #s 481-83.

Crowley took FMLA leave in 2010, 2011, and 2012 for
three surgeries on his ankle. He says Wal-Mart Market Manager
Brian Halsey pressured him to return to work early from each of
these surgeries. *See* Concise Statement of Facts ¶ 6; Response to
Concise Statement of Facts, ECF No. 62, PageID # 450 (admitting
paragraph 6 of Concise Statement of Facts).

In March 2013, Defendant Rey Armijo replaced Halsey as the Market Manager for Wal-Mart and as Crowley's direct supervisor. *See* Declaration of Rey Armijo ¶ 2, ECF No. 56-3, PageID 267. Crowley says that Armijo, upon seeing Crowley walking with a cane and boot, asked on several occasions whether Crowley was still able to run the store. *See* Crowley Depo., ECF No 56-7, PageID # 290. Being able to walk around the store was an essential function of Crowley's store manager job. *See* Crowley Depo., ECF No 56-7, PageID #s 292-93. Although Crowley indicates that Armijo also made comments about Crowley's age and his need to be away from work given the surgeries, Crowley does not provide the precise comments, when they were made, or the context in which they were made. *See*, *e.g.*, Crowley Decl. ¶ 17, ECF No. 62-2, PageID # 481.

According to Rachel Wall, Wal-Mart's Regional Director, each store conducts annual Associate Engagement Surveys. When a store receives "poor" results, it is designated as a "red store" that may be subject to a "grass roots" meeting at which management visits the store to determine the "root causes" of the "poor" rating. Wall says that, in July 2014, based on multiple years of "poor" ratings, she recommended that the Hilo Wal-Mart store have a "grass roots" meeting to determine why it was rated so poorly. *See* Declaration of Rachel Wall ¶ 2, ECF No. 56-4,

PageID # 270. Wall says she began forming the "grass roots" team on July 16, 2014. *Id.* ¶ 5, PageID # 271.

On July 29, 2014, Armijo gave Crowley his "third coaching" regarding store manager deficiencies and set a "30-day clock" in which Crowley was to correct the deficiencies or potentially be terminated. *See* Crowley Decl. ¶ 31, ECF No. 62-2, PageID # 484. Crowley responded by telling Armijo that he would be filing a formal complaint of workplace discrimination against him for "discriminatory comments and actions concerning [Crowley's] age and physical problems over the course of the . . . [last] 18 months that [Armijo] had been the Hawaii Market Manager and [Crowley's] direct Supervisor." *Id.* ¶ 32, PageID # 485. The precise comments and actions are not identified in the record. *Id.*

On July 30, 2014, Wall sent Rosemarie Cacho an e-mail, stating that, because of the Hilo store's Associate Engagement Survey results, a 5-day "formal engagement visit" would occur on the last week in August 2014 or the first week in September 2014. *See* ECF No. 56-11, PageID # 382. On August 11, 2014, Wall e-mailed Cacho, Lester Stoker, and Jerod Strong, indicating that the "grass roots" visit to the Hilo store would occur from August 24 through August 26, 2014. *Id.*, PageID # 384.

While at a Wal-Mart conference in Denver, Colorado, from August 12 to 14, 2014, Crowley met with Wal-mart Regional

Director Chad Donath.  Crowley says that Donath listened to his
complaints about Wal-Mart management, then said that he would
send a team to the Hilo store to examine every aspect of its
operations, that he had "dealt with people like you before," and
that he would fire Crowley if the team found a single deficiency
in the store.  *Id.* ¶ 35, PageID # 485-86.  Crowley says that
Armijo was standing about ten feet away, within earshot of
Crowley's conversation with Donath.  *See* Crowley Depo., ECF No.
56-7, PageID # 285.

Wall and other "red store" team members made their
"grass roots" visit to the Hilo store in late August 2014.
Declaration of Rachel Wall ¶ 8, ECF No. 56-4, PageID # 271.
During that time, Crowley was out on personal leave, preparing
for his fourth ankle surgery.  *See* Crowley Decl. ¶ 36, ECF No.
62-2, PageID # 486.  Crowley characterizes the "grass roots"
visit as an attempt to identify complaints about his performance
as store manager.  *Id.*

Wall says that, based on concerns raised during the
"grass roots" visit about the condition of the power lifting
equipment and procedures for documenting servicing and the
condition of the equipment, she recommended to Donath that Wal-
Mart do a follow-up investigation into the power lifting
equipment issues.  Donath approved Wall's recommendation.  Wall
Decl. ¶ 9, ECF No. 56-4, PageID # 272.

Crowley had another ankle surgery in 2014, taking off
from August 27, 2014, to October 27, 2014, to recover. *See*
Crowley Decl. ¶ 5, ECF No. 62-2, PageID # 477. Jerod Strong, a
shift manager at the Kapolei Wal-Mart store, was the acting store
manager while Crowley was out. *Id.*

In September 2014, Strong and Cacho, Wal-Mart's Market
HR manager, conducted the follow-up investigation. *See*
Declaration of Jerod Strong ¶ 2, ECF No. 56-6, PageID # 278.
They interviewed employees who indicated that a Nissan forklift
had had bald tires that caused it to slip on wet ground. *See* ECF
No. 56-14, PageID # 393 (Klint Kapeliela, an overnight associate,
mentioning a concern that bald tires on forklifts caused the
forklifts to slip on wet ground); *id.*, PageID # 395 (Reynold
Acosta, another associate, expressing the same concern, saying
that the forklifts spun out when their tires were on wet
surfaces); *id.* (Linda Yoshida, overnight Support Manager,
describing the Nissan forklift as being "in horrible condition"
and noting that its tires were "really balled," that it skidded
on rainy days, and that it had not been "tagged out" or taken out
of service earlier). On September 5, 2014, four new tires were
ordered for the Nissan forklift. *Id.*, PageID # 397. Strong says
he and Cacho determined that there were several violations by the
Hilo Wal-Mart management team with respect to the power lifting
equipment. *See* Strong Decl. ¶ 3, ECF No. 56-6, PageID # 279.

According to Todd Stokes, Wal-Mart's Regional HR
Director, Cacho updated him on the investigation. *See*
Declaration of Todd Stokes ¶ 3, ECF No. 56-5, PageID # 274.
Stokes concluded that there were "serious" power lifting
equipment violations at the Hilo store, including an unsafe
forklift that was not removed from service until Strong and Cacho
directed the overnight manager to do that. *Id.* ¶ 4, PageID
# 275. Stokes says he consulted with Jane Billings, Wal-Mart's
Senior Safety Manager for the West Division, and concluded that
the safety issues warranted firing Crowley, unless Crowley could
adequately explain what had happened. *Id.* Stokes says that he
recommended to Donath, to Kim Sentovich, Wal-mart's Divisional
Senior Vice President, and to Lee Swietlikowski of Wal-Mart's
Divisional HR Department that Crowley, three shift leaders, and
two assistant store managers be fired, unless Crowley could
adequately explain the power lifting equipment violations. *Id.*,
PageID #s 275-76. Donath, Sentovich, and Swietlikowski approved
Stoke's recommendation but decided to wait until Crowley had
returned from leave to interview him. *Id.*, PageID # 276.
Sentovich says that Donath made no attempt to sway her into
terminating Crowley. *See* Declaration of Kim Sentovich ¶ 3, ECF
No. 60, PageID # 434.

Crowley was scheduled to return to work on October 27,
2014. The day before that, Crowley was told to report to

management offices on Oahu, a plane flight away from the Hilo
store on the Big Island. Crowley Decl. ¶ 50, ECF No. 62-2,
PageID # 493. Crowley says that he told the person contacting
him that his doctor had told him to work no more than four hours
a day, after which he was to return home and elevate his foot.
*Id.* On October 27, 2014, Crowley met with Cacho and Armijo. *Id.*
¶ 51. Armijo says that Crowley was generally unaware of the
issues with the power lifting equipment and that Crowley had
personally failed to verify compliance with company policy. *See*
Armijo Decl. ¶ 4, ECF No. 56-3, PageID # 268.

    Cacho and Armijo spoke with Stokes after their
interview with Crowley. Based on that conversation, Stokes
directed Cacho and Armijo to fire Crowley. *Id.* ¶ 5. Cacho and
Armijo then notified Crowley that he was fired. *Id.* Crowley
says the trip took more than 14 hours, much longer than the
doctor-recommended four-hour period. *See* Crowley Decl. ¶ 54, ECF
No. 62-2, PageID # 494. Crowley's understanding is that Cacho
and Armijo traveled to Hilo the following day to fire the other
managers. *Id.* ¶ 55, PageID # 495.

    Crowley's position in this litigation is that the
forklifts had to be used outside on the wet surfaces because the
Hilo store lacked sufficient storage and kept merchandise outside
in shipping containers. Crowley says the Nissan forklift had
solid rubber tires that were only replaced when there was uneven

wear or when the rubber was "worn down so far that the metal rims begin[] to show." Crowley says that the tires were not replaced simply because they were bald.[2] Crowley Decl. ¶¶ 42-43, ECF No. 62-2, PageID # 489. Crowley does not indicate when the forklift tires were supposed to be replaced. He says that he is not certified to perform safety checks on power lifting equipment. *Id.* ¶ 48, PageID # 492; Crowley Depo., ECF No. 56-7, PageID # 297 ("I myself was not certified on any of that equipment, so it wouldn't be that I was an expert."). Crowley admits that, unless there was something obvious like a flat tire, he relied on someone else to determine whether a part needed fixing or replacing. *See* Crowley Depo., ECF No. 56-7, PageID # 297.

On December 23, 2014, Crowley filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission. *See* ECF No. 56-9, PageID 307.

---

[2]Crowley attaches to his Opposition what purports to be the Declaration of Joni Y. Uemura, but the document is not signed under penalty of perjury. *See* ECF No. 62-1. Uemura says that the forklift had solid rubber tires and would therefore not be unsafe without tread, as the tires were not at risk of going flat. *Id.* ¶ 7, PageID # 474. Even if the court considers this statement, it does not address whether bald tires were a safety issue on wet ground.

IV.     ANALYSIS.

        A.      **Summary Judgment is Granted in Favor of Defendants
                With Respect to the Disparate Treatment Claim
                Asserted Under the ADEA in Count I But Denied With
                Respect to the Disparate Treatment Claim Asserted
                Under the ADA in Count II.**

        In Count I, Crowley asserts he suffered disparate

treatment in violation of the ADEA, and in Count II asserts

disparate treatment under the ADA.  The court grants summary

judgment in favor of Defendants with respect to Crowley's

disparate treatment claim under the ADEA in Count I, but denies

it with respect to the disparate treatment claim under the ADA in

Count II.

        The ADEA, 29 U.S.C. § 623, prohibits discrimination

based on age.  Specifically, the ADEA makes it "unlawful for an

employer . . . to fail or refuse to hire or to discharge any

individual [who is at least 40 years old] . . . because of such

individual's age."  29 U.S.C. § 623(a)(1); 29 U.S.C. § 631(a)

("The prohibitions in this chapter shall be limited to

individuals who are at least 40 years of age").  The ADA

prohibits discrimination against qualified individuals on the

basis of their disabilities.  42 U.S.C. § 12112(a) ("No covered

entity shall discriminate against a qualified individual on the

basis of disability in regard to job application procedures, the

hiring, advancement, or discharge of employees, employee

compensation, job training, and other terms, conditions, and

14

privileges of employment."). The ADA also protects persons who are regarded as disabled. *See* 42 U.S.C. § 12101(1)(C); 29 C.F.R. § 1630.2(l).

A plaintiff asserting disparate treatment may prove that claim in two ways. A plaintiff may prove disparate treatment by producing direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the employer. *See Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008). Crowley fails to raise a genuine issue of fact by pointing to direct or circumstantial evidence of age discrimination; he simply alleges that Armijo made "comments related to my age." Crowley Decl. ¶ 17, ECF No. 62-2, PageID # 481. Without the factual detail of what was said, the court cannot infer discrimination; not all references to age reflect discrimination. The only specific comments about Crowley's age identified by Crowley concern Salby's alleged statement to Crowley in 2012 that "old people like you have a difficult time understanding new concepts, technology, like computers." *Id.*, PageID # 283. This comment cannot support Crowley's ADEA claim because Salby transferred to a different position with Wal-Mart in March 2013 and played no role in what happened to Crowley thereafter. *See* Salby Decl. ¶ 2, ECF No. 56-2, PageID # 265. Indeed, Crowley conceded at the hearing that his claim against Salby was time-barred.

The second way to establish disparate treatment is under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), discussed in detail later in this order. With respect to the disparate treatment claim under the ADEA, Crowley simply fails to raise an inference that he was discriminated against because of his age. His reference to non-specific comments about age is insufficient to raise an issue of fact as to age discrimination or to demonstrate a pretext for discrimination. The court therefore grants Defendants summary judgment with respect to the ADEA disparate treatment claim asserted in Count I.

Crowley fares better with respect to his ADA disparate treatment (termination) claim. He points to Armijo's comments about whether he was physically able to perform his job as store manager. Such comments, combined with Armijo's role in terminating Crowley, are circumstantial evidence that Armijo may have discriminated against Crowley based on his disability.

Defendants argue that asking a person about his or her ability to do his or her job does not relate to a disability. But the Ninth Circuit requires very little direct evidence to defeat a summary judgment motion in a discrimination case. *See EEOC v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009) (internal citation omitted). The Ninth Circuit "has 'repeatedly held that a single discriminatory comment by a plaintiff's supervisor or

decisionmaker is sufficient to preclude summary judgment for the employer.'" *Nguyen v. Qualcomm, Inc.*, 501 Fed. Appx. 691, 693–94 (9th Cir. 2012) (quoting *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1039 (9th Cir. 2005)). Whether Armijo's comments about Crowley's ability to do his job were discriminatory is left for the trier of fact. At this point, they suffice to permit the issue to go to the jury, which could determine that those comments indicated a disability animus based on the tone or context in which they were made. Summary judgment is therefore denied with respect to Crowley's disparate treatment claim under the ADA asserted in Count II.

Even under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), Defendants would not be entitled to summary judgment on that ADA claim. The *McDonell Douglas* burden-shifting analysis requires Crowley to put forth evidence that: (1) he is "disabled" within the meaning of the statute; (2) he is a "qualified individual" (that is, he is able to perform the essential functions of his job, with or without reasonable accommodations); and (3) he suffered an adverse employment action "because of" his disability. *See Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001). "At the summary judgment stage, the requisite degree of proof necessary to establish a prima facie case is minimal and does not even need to rise to the level of a preponderance of the

evidence." *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (alterations, quotation marks, and citation omitted)).

In relevant part, the ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities" or as "being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A) & (C). Major life activities include "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." 29 C.F.R. § 1630.2(i).

The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Crowley makes the minimal showing necessary to establish a prima facie case of ADA disparate treatment. There is no dispute that he walked with a cane with his foot in a boot. At a minimum, Crowley raises an issue of fact as to whether he was capable of performing the essential functions of his job, which included walking around the Hilo Wal-Mart store. Crowley says that Armijo, upon seeing Crowley walking with a cane and

boot, asked on several occasions whether Crowley was able to run the store.  *See* Crowley Depo., ECF No 56-7, PageID # 290. Armijo, who participated in the termination of Crowley, may have regarded Crowley as disabled.  *See* 42 U.S.C. § 12102(1)(C) (for purposes of ADA, disability includes being regarded as disabled); 29 C.F.R. § 1630.2 (g)(1) and (l) (same).

Under the *McDonell Douglas* burden-shifting analysis, the burden shifts to Wal-Mart to demonstrate a legitimate, nondiscriminatory reason for terminating Crowley.  Wal-Mart easily satisfies this burden, saying that, as the Hilo store manager, Crowley was responsible for the safety of the store's employees and that, by having employees drive forklifts with bald tires on wet ground, a safety risk was created.  Wal-Mart therefore argues that it was justified in terminating Crowley and others.

The burden thus shifts back to Crowley to demonstrate that the proffered legitimate, nondiscriminatory reason was a pretext for discrimination.  Crowley raises an issue of fact as to pretext.  Whether Armijo's comments about Crowley's ability to do his job indicate discriminatory animus is for the jury to decide.  The Ninth Circuit says that when a potentially bigoted comment is not a "stray remark," even when an employer has a legitimate, nondiscriminatory reason for taking an adverse employment action, the plaintiff "will *necessarily* have raised a

genuine issue of material fact with respect to the legitimacy of
bona fides of the employer's articulated reason for its
employment decision." *Cordova v. State Farm Ins. Cos.*, 124 F.3d
1145, 1149 (9th Cir. 1997) (quotation marks and citation
omitted). Thus, even though Wal-Mart has demonstrated a
legitimate nondiscriminatory safety reason for having terminated
Crowley and others based on the bald tires of the Nissan
forklift, it is for the jury to decide whether that reason was
pretextual given Armijo's participation in Crowley's termination.

Armijo says that he and Cacho interviewed Crowley with
respect to the power lifting equipment issues. Armijo then
related to Stokes what was discussed in that interview. Based on
that relation of information, Stokes decided to terminate
Crowley, and Armijo and Cacho carried out that decision. *See*
Armijo Decl. ¶¶ 3-5, ECF No. 56-3, PageID #s 267-68. While the
evidence of pretext is hardly overwhelming, a jury might well
decide that Armijo sought to have Stokes terminate Crowley
because Armijo believed Crowley was too disabled to revive the
Hilo Wal-Mart store, and that terminating Crowley because of
issues with power lifting equipment was simply a pretext for
disability discrimination.

**B.  Summary Judgment is Granted in Favor of Defendants With Respect to the Hostile Work Environment Claims Asserted Under the ADEA and the ADA.**

In Count IV, Crowley asserts that he suffered a hostile work environment claim in violation of the ADEA and the ADA (Count I also asserts a hostile work environment claim under the ADEA).  Summary judgment is granted in favor of Defendants with respect to these claims.

Hostile work environment claims have been recognized under the ADEA.  *See Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1109 (9th Cir.1991) (noting that a hostile work environment claim was cognizable under the ADEA).  But it is not clear whether the Ninth Circuit recognizes a hostile work environment claim under the ADA*.  See Brown v. City of Tucson*, 336 F.3d 1181, 1190 (9th Cir. 2003) (declining to decide whether a hostile work environment claim exists under the ADA).  In any event, a hostile work environment claim exists when there is severe or pervasive and unwelcome verbal or physical harassment because of a plaintiff's membership in a protected class.  *See Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66-67 (1986).  To be actionable, the environment must be both objectively and subjectively offensive.

When determining whether an environment was sufficiently hostile or abusive, courts examine all of the circumstances, including the frequency of the discriminatory

conduct, its severity, whether it was physically threatening or humiliating, and whether it unreasonably interfered with an employee's work performance. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998). Simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not amount to discriminatory changes in the terms and conditions of employment. *Id.* at 788; *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004) ("Simply causing an employee offense based on an isolated comment is not sufficient to create actionable harassment").

Under the ADA, plaintiffs must exhaust administrative remedies by filing a charge of discrimination with the EEOC within 180 or 300 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 12117(a) ("The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment."); 42 U.S.C.A. § 2000e-5 (charge must be filed within 180 days of unlawful practice, but is extended to 300 days when a person initially institutes proceedings with a state or local agency); *Stiefel v. Bechtel*

*Corp.*, 624 F.3d 1240, 1243-44 (9th Cir. 2010) (administrative exhaustion required under ADA); *Ramirez v. Reeve-Woods Eye Ctr.*, 2014 WL 2807638, at *4 (E.D. Cal. June 20, 2014) ("exhaustion of administrative remedies is required under the ADA").

Similarly, the ADEA requires exhaustion of claims by nonfederal employees within 180 or 300 days of an alleged unlawful practice, depending on whether the state has an age discrimination law and an agency to grant relief from discrimination. *See* 29 U.S.C. § 626(d)(1); *Limongelli v. Postmaster General of United States*, 707 F.2d 368, 372 (9th Cir. 1983)(per curiam) ("This incident was not encompassed in his earlier EEOC charge. He did not exhaust his administrative remedies under ADEA and therefore cannot look to the courts for relief."); *but see* 29 U.S.C. § 633a (Nondiscrimination on account of age in Federal Government employment); *Kennedy v. Columbus Mfg., Inc.*, 2017 WL 4680079, at *2 (N.D. Cal. Oct. 18, 2017) ("To file suit for a Title VII, ADA, or ADEA claim, a plaintiff must first timely file a charge of employment discrimination with the EEOC.").

Crowley filed his charge with the EEOC on December 23, 2014, making claims that arose more than 300 days before that date (February 26, 2014) time-barred unless Crowley demonstrates a continuing violation. See *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 822 (9th Cir.), amended, 271 F.3d 910 (9th

Cir. 2001) ("The continuing violations doctrine extends the accrual of a claim if a continuing system of discrimination violates an individual's rights up to a point in time that falls within the applicable limitations period." (quotation marks and citation omitted)).  Crowley does not assert that claims based on actions taken before February 26, 2014, are timely given a continuing violation.

As conceded by Crowley, his ADEA hostile work environment claim is time-barred to the extent it is based on Salby's 2012 comments that "old people like you have a difficult time understanding new concepts, technology, like computers." Even had a timely claim been asserted based on Salby's comments, those comments are isolated and, under the circumstances, insufficient to establish a hostile work environment.  *See Faragher*, 524 U.S. at 788 (noting that isolated comments are insufficient to support a hostile work environment claim).  The very nature of a hostile work environment requires a pervasive atmosphere, not a single remark that does not alter the conditions of employment.  *See Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994) (requiring comments to be sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment).

At the hearing on the motion, Crowley indicated that his hostile work environment claim was based only on Armijo's

comments.  Crowley says that Armijo asked on several occasions
whether Crowley was able to run the store after Armijo saw
Crowley walking with a cane and a boot.  *See* Crowley Depo., ECF
No 56-7, PageID # 290.  Crowley additionally says that Armijo
made comments about Crowley's age and need to be off of work
because of surgeries.  Crowley did not provide further detail
regarding the comments or when they were made.  *See*, *e.g.*,
Crowley Decl. ¶ 17, ECF No. 62-2, PageID # 481.

Even if these comments were timely raised with the
EEOC, Crowley fails to show that they created a hostile work
environment.  These comments, without more, fail to demonstrate a
working environment that involves severe and pervasive
harassment.  Crowley does not show that the comments were so
numerous or of such a nature that they changed the conditions of
his employment and created an abusive working environment.  *See
Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1161 (9th Cir.
2017).  Nor does Crowley show that a reasonable person in his
position would have found the working environment created by
Armijo's alleged comments to be objectively unreasonable.  *Id.*
The record in this case does not indicate that the occasions on
which Armijo allegedly questioned Crowley about whether he was
able to run the store given the nature of his ankle injury, even
combined with alleged comments about Crowley's surgeries, were so
frequent or so severe as to have been abusive.  There is no

evidence that they objectively polluted Crowley's workplace, making it more difficult for him to do his job, to take pride in his work, or to desire to stay on in his position. *See Davis v. Team Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008) ("A working environment is abusive if hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position." (quotation marks and citation omitted)).

Summary judgment is therefore granted in favor of Defendants with respect to the hostile work environment claims.

**C.    Summary Judgment is Granted in Favor of Defendants With Respect to the FMLA retaliation Claim Asserted in Counts III and V, but is Denied With Respect to the ADA Retaliation Claim Asserted in Count V.**

Counts III and V assert that Defendants violated the FMLA and ADA by retaliating against Crowley for having complained with respect to his FMLA and ADA rights. At the hearing on the motion, Crowley conceded that his FMLA claim was not supported by the evidence. Accordingly, summary judgment is granted in favor of Defendants with respect to the FMLA retaliation claims asserted in Counts III and V.

Crowley's ADA retaliation claim in Count V falls under 42 U.S.C. § 12203(a), which prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful by this chapter" and under § 12203(b),

which prohibits interference with the exercise of ADA rights through retaliation for the exercise of such rights. Defendants move for summary judgment with respect to the ADA retaliation claim, arguing that Crowley cannot demonstrate a prima facie case of retaliation under the ADA.

To establish a prima facie case of retaliation under the ADA, an employee must show that he or she (1) engaged in a protected activity; and (2) suffered an adverse employment action; and that (3) there was a causal link between the two. *See Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004) (setting forth the elements of a prima facie claim of retaliation under ADA); *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1121 (9th Cir. 2000) (en banc) ("[W]e join our sister circuits in adopting the Title VII retaliation framework for ADA retaliation claims."), *vacated on other grounds, U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 122 (2002).

To prove the causation element of an ADA retaliation claim, a plaintiff must show that *but for* the plaintiff's exercise of rights, the plaintiff would not have suffered an adverse employment action. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) (noting that Title VII's prohibition against retaliation uses the same language as the ADEA's prohibition against age discrimination, and holding that "but for" causation is required for retaliation claims under

Title VII); *Egan v. Delaware River Port Auth.*, 851 F.3d 263, 272 (3d Cir. 2017) ("In the ADEA and in Title VII's anti-retaliation provision, Congress chose language that made clear that a plaintiff must prove "but-for" causation between the adverse employment action and the protected characteristic"); *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) (applying "but for" causation to ADA retaliation claims). At the summary judgment stage, a plaintiff must therefore show that a reasonable trier of fact could conclude by a preponderance of the evidence that the plaintiff would not have suffered an adverse employment action but for impermissible retaliation.

In relevant part, the ADA prohibits discrimination against qualified individuals with disabilities. 42 U.S.C. § 12112(a). The ADA also protects persons who are regarded as disabled. *See* 42 U.S.C. § 12102(1)(C); 29 C.F.R. § 1630.2(g)(1) and (l). Crowley apparently complained to Donath with Armijo in earshot that Armijo and his predecessor had wondered whether Crowley was able to do his job given that he was walking with a cane and had a boot on. *See* Crowley Depo., ECF No. 56-7, PageID # 285; Crowley Decl. ¶ 35, ECF No. 62-2, PageID #s 485-86. Crowley had also earlier told Armijo that he would be filing a formal complaint of workplace discrimination against Armijo for "his discriminatory comments and actions concerning [Crowley's]

age and physical problems over the course of the . . . [last] 18 months that he had been the Hawaii Market Manager and [Crowley's] direct Supervisor." *See* Crowley Decl. ¶ 32, ECF No. 62-2, PageID # 485. Because Donath and Armijo participated in the decision to terminate Crowley, a jury might reasonably determine that Crowley was being retaliated against for having complained of ADA violations. In other words, a question of fact exists as to whether Crowley's exercise of rights under the ADA was the but for cause of his termination.

## V.       CONCLUSION.

The court grants Defendant's motion for summary judgment, ECF No. 55, in part and denies it in part. The motion is denied with respect to the disparate treatment claim asserted under the ADA in Count II, and the retaliation claim asserted under the ADA in Count V. Summary judgment is granted in favor of Defendants with respect to all other claims.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 11, 2018.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*Crowley v. Wal-Mart Stores, Inc., et al.*, Civ. No. 16-00293 SOM/RLP; ORDER
GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT